IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| EARNEST W. SMITH, ) | |
| ) | |
| Movant/Defendant, ) | |
| ) | |
| v. ) | 1:03-CR-00436-RDP-JEO |
| ) | 1:06-CV-08041-RDP-JEO |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION**

Movant Earnest W. Smith ("Defendant")[1] initiated the present action by filing a motion to vacate, set aside, or correct his conviction pursuant to 28 U.S.C. § 2255. (06-8041 at Doc. 1 (hereinafter "Motion")).[2] Upon consideration of Defendant's arguments, the court finds that the motion is due to be denied.

**I.    BACKGROUND**

   **A.    Procedural History**

On August 29, 2003, Defendant was charged in case number 1:03-CR-436-RDP-JEO in a one-count indictment with bank robbery, in violation of 18 U.S.C. § 2113(a). Counsel was appointed to represent Defendant at his arraignment. New counsel was appointed on May 13, 2004.

---

[1] Because Smith is a criminal defendant in case number 1:03-CR-00436-RDP-JEO, and his § 2255 petition challenges his conviction and sentence in that criminal case, he will be referred to as "Defendant" in this Memorandum Opinion.

[2] References to "Doc. ___" are to the documents as numbered by the Clerk of the Court in the court's record in this case. The pleadings from the original criminal case are designated as "03-0436" and the pleadings on the motion to vacate are designated as "06-8041".

Defendant's motion includes a "Memorandum of Law in Support of Motion Under 28 U.S.C. § 2255" that will be referenced herein as "Mem. ___".

Defendant was tried before a jury commencing on July 12, 2004. He was convicted the following day. The court ordered that a presentence report be prepared. He was sentenced on October 21, 2004, to a term of 86 months incarceration, three years supervised release, and restitution of $1,840.00.

Defendant appealed his conviction and sentence. The Court of Appeals for the Eleventh Circuit affirmed the conviction and sentence on August 29, 2005.

Defendant filed the present motion on October 5, 2006.[3] He alleges: (1) equal protection and due process violations occurred as a result of the under representation of African-Americans on the jury venire; (2) counsel was ineffective in failing to challenge the composition of the jury; (3) counsel was ineffective in failing to raise a *Booker*[4] challenge to the court's application of a two-level enhancement under the § 2B3.1(b)(2)(7) of the Sentencing Guidelines dealing with the death threat in this case; (4) the court erred in assessing criminal history points for his prior misdemeanor convictions that occurred in the absence of counsel in violation of *Shelton*;[5] and, (5) counsel was ineffective in failing to challenge the use of the misdemeanor convictions at sentencing and on appeal. (Mem. at pp. 1-11).

The United States was ordered to file a response to Defendant's motion. (06-8041, Doc. 2). In its response, the United States asserts that Defendant's claims are either procedurally defaulted or without merit. (06-8041, Doc. 6 (hereinafter "Response") at pp. 5-20). The court afforded Defendant an opportunity to respond. He has filed various pleadings, including (1) a "Call for

---

[3] *See Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (applying the "mailbox rule").

[4] *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).

[5] *Alabama v. Shelton*, 535 U.S. 654, 122 S. Ct. 1764 (2002).

Response" (06-8041, Doc. 9), (2) a "Petition for Redress of Grievance" (*id.* at Doc. 10), (3) an "Official Record Entry [of] Commercial Affidavit" (*id.* at Doc. 11), and (4) a "Request for Status" (*id.* at Doc. 17).

### B. Offense Conduct

The evidence at trial established that two men entered the Farmers and Merchants Bank in Oxford, Alabama, and robbed teller Jennifer Ballew. She testified that one of the men "approached her booth and handed her a note which read: 'I want all the cash, bitch or I'll kill all; you say, you die.'" (Attachment F at p. 2).[6] Ballew gave the robber $1,840 from her cash drawer and activated the alarm as the two men left the bank.

Naveon Taylor testified at trial that he was one of the two men who entered the bank. He identified Defendant as the second robber. "According to Taylor, he and Smith lived together at the time of the robbery and they worked out a plan to rob the bank because they needed money for drugs. Taylor testified that Smith wrote the demand note before the robbery at the home of Smith's girlfriend." *Id.* Taylor also testified that they were assisted in the robbery by Defendant's girlfriend who drove the getaway car. Defendant's fingerprints were recovered in the car.

## II. DISCUSSION

### A. Procedurally Defaulted Claims

The United States initially asserts that two of Defendant's claims — *i.e.*, the jury venire claim and the *Shelton* claim — are barred from review, or procedurally defaulted, because Defendant failed to raise them on direct appeal. (Response at p. 5). The law in this area is well-settled:

---

[6] The documents identified herein as "Attachment ___" are located in the Government's Response located at 06-8041, Doc. 6.

> [A]n available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. . . . A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development. . . . When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error. . . .

*Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (citations and explanatory parentheticals omitted).

> In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all. *See, e.g., Smith v. Murray*, 477 U.S. 527, 534, 106 S. Ct. 2661, 2666, 91 L. Ed. 2d 434 (1986); *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992); *Lomelo v. United States*, 891 F.2d 1512, 1515 (11th Cir. 1990).[ ] Further, to show cause for procedural default, [the defendant] must show that some objective factor external to the defense prevented [the defendant] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [the defendant's] own conduct.[ ] *Smith v. Jones*, 256 F.3d 1135, 1145 (11th Cir. 2001) (noting 'that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule' (quoting *Murray v. Carrier*, 477 U.S. at 488, 106 S. Ct. at 2645)); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001); *McCoy*, 953 F.2d at 1258[ ].

*Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004) (footnotes omitted). As the Eleventh Circuit has further explained:

> Perceived futility of a claim does not constitute cause for procedural default (citation omitted). "Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim." (citation omitted). As stated in *Lomelo*, "In determining whether cause exists, the Supreme Court has held that the question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was available at all." 891 F.2d at 1515 (internal quotations and citation omitted).

*Lynn*, 365 F.3d at 1235 n.19. Additionally, Defendant must show that the deficiency "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions" before relief may be granted. *United States v. Frady*, 456 U.S. 152, 170 (1982).

> Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397, 413 (1986).

*Mills*, 36 F.3d at 1055. To establish actual innocence, a defendant must demonstrate that, "in light of all the evidence," "it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 328, 327 (1995) (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 160 (1970)).

The United States is correct that Defendant did not raise these two claims on direct appeal, and that he is not entitled to relief for at least two reasons. First, Defendant has failed to present any evidence that "some external factor to the defense" prevented him from raising these issues on direct appeal.[7] Second, Defendant cannot meet the cause and prejudice or actual innocence exceptions to warrant additional review.

### B. Ineffective Assistance of Counsel

#### 1. Applicable Standard of Review

The applicable standard of review of ineffective assistance of counsel claims is well-established:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or . . . sentence has two components. First, the defendant

---

[7] To the extent that Defendant argues that his counsel was ineffective, as will be discussed *infra*, the court finds otherwise.

> must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Defendant must satisfy two requirements to prevail on an ineffective assistance of counsel claim. He must show that (1) "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694. In this Circuit, we have referred to the latter element as the 'prejudice' prong and the former element as the 'performance' prong." *Reece v. United States*, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997) (parallel citations omitted). When considering such claims, a court need not address both components because a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel. *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000); *see also Reece*, 119 F.3d at 1464 n.4. Lastly, the court notes that the test is the same for challenges to counsel's effectiveness on appeal. *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S. Ct. 746, 764 (2000).

In examining the first prong under *Strickland*, the Eleventh Circuit has articulated the relevant considerations as follows:

> The standard for counsel's performance is reasonableness under prevailing professional norms. The purpose of ineffectiveness review is not to grade counsel's performance. . . . To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled. . . . The

> petitioner must establish that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance.
>
> Courts must indulge [the] *strong presumption* that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment. Thus, counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy. Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one. . . . [B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a *petitioner must establish that no competent counsel would have taken the action that his counsel did take*. . . .
>
> In reviewing counsel's performance, a court must avoid using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time. [I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Johnson v. Alabama*, 256 F.3d 1156, 1176-77 (11th Cir. 2001) (quoting *Chandler v. United States*, 218 F.3d 1305, 1313-16 (11th Cir. 2000) (en banc) (citations and internal quotation marks from *Chandler* omitted in *Johnson*) (emphasis added)).

With regard to the second prong under *Strickland*, it is not enough to show that an error had some conceivable effect on the outcome of the proceeding. *Robinson v. Moore*, 300 F.3d 1320, 1343-44 (11th Cir. 2002). To succeed on an ineffective assistance claim, Defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id*.

    **2.**    **Jury Selection**

Defendant asserts that counsel was ineffective in failing to challenge the racial composition of the jury venire. Specifically, he states that his jury pool was composed of 35 jurors – 34 of whom were white and 1 was Spanish. (Mem. at p. 2). He continues, stating that "[t]here were no Blacks

7

present in the jury pool despite the abundant population of Blacks inhabiting the Birmingham, Alabama area." *Id*. In support of this contention, he states that had counsel investigated the matter, he would have found that the African-American population in Birmingham, Alabama is 26%, making the selection process questionable. *Id*. at p. 3.

Contrary to Defendant's contentions, the United States asserts that Defendant's arguments are flawed because this case was tried in the Eastern Division of the court and not in the Southern Division where Birmingham is located. It further contends that there was no "racial component" to Defendant's case and the evidence of guilt was overwhelming. (Response at p. 13). In support of its argument, the United States has submitted the affidavit of trial counsel for Defendant. Trial counsel states in part as follows:

> First, Mr. Smith's crime occurred in Oxford, Alabama, not Birmingham. Mr. Smith's case also had absolutely no racial component. He was identified and implicated in the robbery by a cooperating co-defendant, Naveon Taylor, who testified at trial that Mr. Smith was involved in, and therefore guilty of bank robbery. Mr. Taylor was African-American. During the robbery, an eye-witness in the bank identified the dealer's tag on the car used in the robbery. The dealer was contacted, and he testified at trial that he had allowed a woman (who identified herself as Ms. Smith) to test drive the car on the date and time of the robbery. This same car was later dusted for fingerprints and latent fingerprints were recovered. A known sample of Mr. Smith's fingerprints was compared with the latent fingerprint taken from the getaway car and they matched. Mr. Smith seems to feel that he was denied due process because of the racial composition of the jury venire, stating that had the jury been comprised of 26% African-Americans that somehow they would have disbelieved Mr. Taylor's testimony, and disregarded the fingerprint evidence and found him not guilty. Counsel, with the assistance of Mr. Smith, conducted a detailed voir dire examination of the venire. Counsel states herein, that he is completely unaware of information that Mr. Smith claims to know – as stated in his 2255 motion, "that to his knowledge a system similar to the prohibited "Key Man" system, under which the judge selects a jury commission, who will ultimately select prosecutive jurors was used in this case". I believe that Mr. Smith was tried by a fairly composed jury of his peers, and that after a fair trial; he was convicted by that jury beyond a reasonable doubt.

(Attachment G at ¶ 6).

In light of the appropriate legal standards and premised on the deference traditionally afforded counsel in tactical trial choices and the conclusory allegations offered by Defendant, the court finds that he is entitled to no relief on this claim. First, he has not demonstrated that his counsel's performance was below the standard of reasonableness under the circumstances. Jury selection clearly is an area involving trial strategy that generally is not conducive to hindsight review. This case is no exception, especially since Defendant's claim is premised on wholly incorrect information regarding the jury selection process. Second, he has shown no evidence of prejudice. The evidence introduced at trial, including the testimony of Defendant's accomplice and the latent fingerprints placing Defendant in the getaway vehicle, was substantial. Third, because of the lack of merit to this challenge, there was no reason for counsel to present the issue on appeal. *See Heath v. Jones*, 941 F.2d 1126, 1130-31 (11th Cir. 1991) (noting Supreme Court precedent that "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue").

### 3. Death Threat Enhancement

Defendant next challenges counsel's performance in failing to challenge the enhancement of his sentence under U.S.S.G. § 2B3.1(b)(2)(F), concerning the use of a death threat during a robbery. Defendant asserts that fact (*i.e.*, the use of a death threat) was not properly determined by the jury beyond a reasonable doubt as required by *Booker*. The United States responds by asserting that Defendant is entitled to no relief on this claim because he cannot show any prejudice. (Response at pp. 17-18).

Defendant's Sentencing Guidelines calculation did include an enhancement under § 2B3.1(b)(2)(F) because of the death threat. After his sentencing and before the time for filing a brief

9

on appeal, the Supreme Court decided *Booker*.  Accordingly, defense counsel presented that claim on appeal.  Rejecting it, the Eleventh Circuit Court of Appeals stated as follows concerning the plain error requirement that Defendant demonstrate that the result at trial would have been different but for the mandatory application of the guidelines:

> Although Smith did not object to the enhancement on Booker grounds, the district court indicated that the jury had found that Smith played a role in the use of the demand letter[, which contained a death threat].  Thus, the district court determined that the extra-verdict enhancement had been decided by the jury.  Id. at 1301.  Moreover, if faced with the same information on remand, the court would still consider the same guideline and the same facts. . . .  There is no indication that the district court would have sentenced Smith differently if it had known the guidelines were only advisory.  Thus, Smith cannot meet the third prong of the plain error test.  . . .

(Attachment F at p. 8).

In considering Defendant's ineffective assistance of counsel claim concerning this matter, the court again finds Defendant cannot show the requisite prejudice to warrant any relief.  Specifically, the court finds that Defendant has not and cannot show a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  As previously noted, Taylor testified at trial that he and Defendant decided to rob the bank because of their need for drug money.  He also testified that Defendant wrote the demand note before the robbery at the home of Defendant's girlfriend.  Thus, there is no reason to believe that the result would have been different but for counsel's purported error.

### 4. *Shelton* Claim

Finally, Defendant asserts that counsel was ineffective in failing to object to the use of certain prior misdemeanor convictions in determining his criminal history.  Specifically, he objects to the

use of his 1997 Birmingham, Alabama conviction for an improper tag/license (Case No. 006266882)[8] and to the use of his conviction for a violation of the State Firearm's Act (Case No. 006658931).[9] (Mem. at p. 9). He contends that he was not afforded counsel in those earlier proceedings contrary to the Supreme Court's holding in *Shelton*. In support of this contention, Defendant asserts that if counsel had "conducted any meaningful discovery or investigation, he would have discovered that Movant did not waive counsel" in these proceedings. *Id*. at p. 10.

The court has examined the entire record and finds nothing to support Defendant's conclusory assertion that he did not waive his right to counsel in the Birmingham proceedings. To the contrary, the only available information, the presentence report, unequivocally demonstrates that Defendant waived his right to counsel in the Birmingham Municipal Court proceedings.[10] Additionally, Defendant did not object to the use of the convictions at the sentencing. Accordingly, the court finds that Defendant is entitled to no relief on these contentions.

As a part of this claim, Defendant further asserts that the court improperly assessed two criminal history points against him because he was on probation with state authorities on a prior Anniston conviction at the time of the offense of conviction. In support of this contention, Defendant asserts that counsel was ineffective in that counsel failed to object to the two-point

---

[8] The presentence report reflects that he was arrested on October 29, 1996, and charged with "no/improper tag" and "no state driver's license" (Case Nos. 006266881 & 82). He pled guilty on August 27, 1997, and was given a fine, court costs, and two years probation. His probation was revoked on January 15, 2002, and he was ordered to serve 90 days custody. (PSR at ¶ 21).

[9] The presentence report reflects that he was arrested on August 26, 1997, and charged with a "violation of [the] State Firearm's Act" and "no state driver's license" (Case Nos. 006632301 & 006658931). He pled guilty on August 27, 1997, and was given a 90 day suspended sentence, a fine, court costs, and two years probation. His probation was revoked on January 15, 2002, and he was ordered to serve 90 days custody. (PSR at ¶ 22).

[10] Based on the court's experience, this information is not added in the presentence report unless the probation officer affirmatively determines, usually through records, that the defendant waived counsel in the earlier cases. This is reflected in the presentence report by the notation, "The defendant waived his right to an attorney" found in each of the relevant paragraphs. (PSR at ¶¶ 21 & 22).

enhancement on page nine of the presentence report even though the probationary term under the Anniston conviction was imposed without the assistance of counsel as required by *Shelton*, thus precluding use of his status at the time of the instant offense.[11]  (Mem. at p. 10).

This claim is without merit.  Although Defendant's Anniston conviction appears to have been rendered without the assistance of counsel or a waiver of the same, that does not change the fact, as reflected in the presentence report (PSR at ¶ 31), that Defendant also was on probation for the Birmingham convictions discussed above at the same time.  Defendant is entitled to no relief.

## CONCLUSION

For the reasons stated above, Defendant's motion to vacate is due to be denied and dismissed with prejudice.  An appropriate order denying this motion will be entered contemporaneously herewith.

**DONE** and **ORDERED** this     13th     day of May, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[11] The relevant paragraph of the report provides:

> At the time the instant offense was committed (May 13, 1999), the defendant was on probation in Birmingham Municipal Case #'s 006266882, 006632301, and Anniston Municipal Case MC 98-2676. Pursuant to U.S.S.G. § 4A1.1(d), two points are added.

(PSR at ¶ 31).

Defendant further argues the correctness of his contention by stating that the presentence report writer "recognized that 'Due to the Supreme Court decision in Alabama v. Shelton[,] regarding uncounseled misdemeanors in which imprisonment might result, no points have been assigned to this conviction.'"  (Motion at p. 10 (citing PSR at ¶ 25)).